# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Case No. 19-03103-01-CR-S-SRB |
| **JULIA M. LAWRENCE,** | |
| Defendant. | |

## UNITED STATES' SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 25)

The United States of America, by Jessica R. Sarff, Assistant United States Attorney, hereby moves the Court to deny Defendant Julia M. Lawrence's *Motion to Suppress Evidence* (Doc. 25). No ground raised in Lawrence's motion requires the suppression of the evidence seized. As a result, Lawrence's motion should be denied.

### I. FACTUAL STATMENT

On May 29, 2019, Springfield, Missouri, Police Department ("SPD") Officers Zachary Schlup and Jeron Tauai were conducting surveillance of a residence located in the 1300 block of North Fulbright Avenue, Springfield, Missouri. That location was the residence of a known methamphetamine dealer in the area. At approximately 7:40 p.m., the officers observed a black 2008 Nissan Xterra bearing Missouri registration PS6Z0T leave the residence heading eastbound on Calhoun Street. The vehicle was registered to Defendant, Julia M. Lawrence.

At the intersection of Calhoun Street and West Avenue, the vehicle stopped in the intersection. The rear driver's door was almost in line with the stop sign. The vehicle then turned northbound and accelerated above the posted speed limit of 30 miles per hour. Officer Schlup paced the vehicle at over 40 miles per hour.

Due to the two traffic violations, Officer Schlup conducted a traffic stop on the vehicle in a parking lot located at 2422 West Division Street. The officers approached the vehicle and made contact with Brian L. Blackard (driver) and Lawrence (passenger). Officer Schlup advised Blackard and Lawrence why they had been stopped and requested their identification and proof of insurance. Lawrence stated the vehicle belonged to her and provided Officer Schlup with an expired insurance card. When Officer Schlup asked Lawrence for her identification a second time, Lawrence retrieved her Missouri identification card from her wallet and questioned Officer Schlup regarding why they had been pulled over. Lawrence also told Officer Schlup she did not have to provide him with her identification if she did not want to. Officer Schlup stated that was true, and Lawrence then willingly provided him with her identification.

Officer Schlup asked Blackard to step out of the vehicle to speak with him and asked him if he had any weapons on him. Blackard began to exit the vehicle and Officer Schlup observed multiple knives in his front pockets. Blackard stated he had a firearm on his right ankle and another one in the driver's floorboard. Officer Schlup placed Blackard in handcuffs and asked Lawrence to exit the vehicle for safety reasons. Officer Schlup advised Blackard he was going to secure the knives and firearms and asked Blackard for consent to search his person, which Blackard granted. Officer Schlup searched Blackard's person and located a total of three knives, several lighters, and a Smith and Wesson, M&P Shield, 9mm, semi-automatic pistol, serial number HKR8170, in a holster on Blackard's right ankle.

Officer Schlup looked in the driver's floor board and located a Harrington and Richardson, Model 922, .22 caliber, revolver, serial number N79280. The revolver's barrel was pointed toward the floorboard and the handle was laying up on the center console, easily accessible by either Blackard or Lawrence.

Officer Schlup unloaded the firearms and placed them, along with the knives, in the front driver's seat of the vehicle. At that time, Officer Schlup began conducting routine identification and warrant checks on both Blackard and Lawrence, including a criminal history check to determine whether either or both of them were convicted felons. Officer Schlup also requested a check on the firearms' serial numbers to determine their registration status and whether they were stolen. During this time, Lawrence was verbally combative, yelling about an illegal search and illegal detention. Officer Schlup advised Lawrence what he was doing in an attempt to calm her down. At that time, Lawrence stated she was a convicted felon and was on probation/parole for possession of a controlled substance. Officer Schlup requested SPD Detective Brad Nicholson, a canine handler, respond to the scene because both Blackard and Lawrence denied consent to search the vehicle.

Dispatch advised Officer Schlup that Blackard had two possible warrants out of Greene County for traffic offenses and unlawful use of a weapon. Blackard, who was positive he was going to jail, requested that all of the items from his pockets be placed inside the vehicle. Officer Schlup conducted a secondary pat down of Blackard's person and located a rubber mouthpiece that would go to a pipe. Officer Schlup smelled the mouthpiece and detected what he believed to be a slight odor of burnt marijuana. Officer Schlup placed the mouthpiece on the driver's seat of the vehicle, and Lawrence stated, "You put that rubber piece that smells like marijuana inside the car so you can search it didn't you?" Officer Schlup, who had not verbally expressed his suspicion regarding the smell of marijuana, told Lawrence he did think the mouthpiece had a slight odor of marijuana, and that her comment had only raised his suspicion.

While Officer Schlup was still waiting on confirmation of the warrants and criminal history returns for both Blackard and Lawrence, Officer Nicholson arrived on scene with his Police

3

Case 6:19-cr-03103-SRB   Document 31   Filed 07/23/20   Page 3 of 10

Service Dog ("PSD") "Hank." Hank conducted an exterior sniff of the vehicle and alerted for the presence of narcotics on the front passenger door by sitting and staring. The officers then conducted a search of the vehicle and located, among other things, approximately 314 gross grams of methamphetamine inside a Taco Bell bag under the passenger seat, over $2,000 in U.S. currency and assorted pills in Lawrence's purse; and baggies, scales, syringes, and q-tips in a black zip bag sitting on the rear passenger seat. SPD Officer Sarah Smith later searched Lawrence's person incident to arrest and located a clear baggie containing 31.9 grams of methamphetamine.

## II. LEGAL ANALYSIS

In her motion to suppress evidence, Lawrence argues her continued detention during a traffic stop while officers called a canine officer went beyond the permissible bounds of the Fourth Amendment and the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968) and *Rodriguez v. United States*, 575 U.S. 348 (2015). She further argues that officers' questions toward her, as well as attempts to secure consent to search her vehicle, all impermissibly added time to the traffic stop. For the reasons that follow, Lawrence's arguments are without merit, and her motion to suppress should be denied.

   1. *Officer Schlup Did Not Extend the Traffic Stop to Conduct a Dog Sniff of Lawrence's Vehicle.*

The dog sniff of Lawrence's vehicle, as well as any and all questioning of Lawrence regarding whether she would consent to a search of her vehicle, were conducted prior to Officer Schlup completing routine tasks associated with the traffic stop. Officer Schlup's actions were wholly within the bounds of the Fourth Amendment, and Lawrence's motion to suppress evidence should be denied.

It is well established that when a defendant is detained incident to a traffic stop, "the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop

4

has been completed." *United States v. Bueno*, 443 F.3d 1017, 1025 (8th Cir. 2006). "Occupants, including passengers, may be detained 'while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" *United States v. Ovando-Garzo*, 752 F.3d 1161, 1163 (8th Cir. 2014) (citing *United States v. Riley*, 684 F.3d 758, 764 (8th Cir.2012)). These routine tasks can include computerized checks of the vehicle's registration, the driver's license and criminal history, and the writing up of a citation or warning. *Id.*; *see also Rodriguez*, 575 U.S. at 355 ("Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.").

In *Rodriguez*, the Supreme Court held that "a dog sniff is not fairly characterized as part of the officer's traffic mission." 575 U.S. at 456. Thus, the police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id*. However, "a dog sniff is not a search within the meaning of the Fourth Amendment, and thus requires no probable cause to be performed." *United States v. Sanchez*, 417 F.3d 971, 976 (8th Cir. 2005). Thus, "as long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful." *United States v. Fuehrer*, 844 F.3d 767, 773 (8th Cir. 2016) (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)).

Here, as noted above, Officer Nicholson and his PSD Hank conducted a dog sniff of Lawrence's vehicle while Officer Schlup was waiting on confirmation of Blackard's warrants and criminal history returns for both Blackard and Lawrence. Case law is clear that warrant and criminal history checks are routine tasks associated with a traffic stop, notwithstanding the writing of any warning or citation for the traffic violation. Officer Schlup did not extend the stop in any

5

way prior to commencing these tasks, and no questions were asked of Lawrence with respect to whether or not she would consent to a search of her vehicle after these tasks were completed. Lawrence's motion to suppress evidence should be denied.

### 2. *Officer Schlup Developed Independent Probable Cause to Search Lawrence's Vehicle Prior to the Dog Sniff Being Completed.*

Notwithstanding the fact that the traffic stop was not unlawfully extended, Lawrence's motion to suppress should be denied because Officer Schlup developed independent probable cause to search Lawrence's vehicle when (1) he observed a firearm inside the vehicle, in plain view and within Lawrence's reach, and Lawrence admitted to being a convicted felon; and (2) he smelled what he believed, based upon his training and experience, to be the odor of burnt marijuana on the rubber mouthpiece he retrieved from Blackard's pocket and Lawrence made a statement confirming his suspicion that the odor was marijuana.

Under the Fourth Amendment, law enforcement officers may stop a vehicle if they have "an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). Under what is termed the "automobile exception" to the warrant requirement, an officer who has lawfully stopped a vehicle can search the vehicle without a warrant if the officer has probable cause. *United States v. Mayo*, 627 F.3d 709, 713-14 (8th Cir. 2010). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (internal quotation marks omitted).

### a. *Officer Schlup Had Probable Cause to Search Lawrence's Vehicle for Evidence Associated with Lawrence Having Committed the Crime of Felon in Possession of a Firearm.*

Irrespective of the dog sniff, Officer Schlup developed probable cause to search Lawrence's vehicle when he observed a firearm in the vehicle and Lawrence admitted she was a

6

convicted felon. *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (defining the crime of felon in possession of a firearm).

As noted above, upon making contact with Blackard and Lawrence, Officer Schlup asked Blackard to exit the vehicle. Blackard complied and stated he had a firearm on his ankle and another firearm in the driver's floorboard. Officer Schlup looked in the driver's floorboard, where he observed a revolver, the handle of which was laying up on the center console and easily accessible by either Blackard or Lawrence. Officer Schlup unloaded the firearms and placed them in the driver's seat. As Officer Schlup began conducting his routine criminal history and warrant checks on Blackard and Lawrence, Lawrence became verbally combative, yelling about an illegal search and an illegal detention. Officer Schlup advised Lawrence what he was doing in an attempt to calm her down, and Lawrence stated she was a convicted felon on probation/parole with the State of Missouri.

At that time, Officer Schlup developed probable cause to both arrest Lawrence and to search her vehicle for additional firearms, ammunition, or other items associated with Lawrence having committed the crime of being a felon in possession of a firearm. Notably, even without a search of the vehicle, a search incident to arrest would have revealed the 31.9 grams of methamphetamine Lawrence was concealing on her person. Nevertheless, Officer Schlup exercised caution and withheld from arresting Lawrence until her criminal history check returned, and from searching the vehicle until PSD Hank detected the odor of a controlled substance coming from the vehicle. This approach was appropriate, and well within the bounds of the Fourth Amendment. See *United States v. Jones*, 269 F.3d 919, 926-27 (8th Cir. 2001) (quotation omitted) (If an officer develops reasonable suspicion regarding unrelated criminal conduct during the course of a lawful traffic stop, "an officer may broaden his inquiry and satisfy those suspicions" without

7

running afoul of the Fourth Amendment). As a result, Lawrence's motion to suppress evidence should be denied.

> b. *Officer Schlup Had Probable Cause to Search Lawrence's Vehicle When He Detected What He Believed to Be the Odor of Burnt Marijuana on the Mouthpiece in Blackard's Pocket.*

Officer Schlup also developed probable cause to search Lawrence's vehicle when he detected the odor of marijuana on the mouthpiece he retrieved from Blackard's pocket. "The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989) (citing *Johnson v. United States*, 333 U.S. 10, 13 (1948)). In addition, the Eighth Circuit has held on numerous occasions that the smell of marijuana coming from a vehicle during a traffic stop gives an officer probable cause to search for drugs. *See United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005) (officer's observation of a mist in the vehicle, along with the smell of marijuana and air freshener gave the officer reasonable suspicion to detain defendant); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (deputy had probable cause to search a truck where the deputy smelled odor of burnt marijuana coming from the cab); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable cause to search the vehicle); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (officer's detection of the smell of burnt marijuana gave him probable cause to search the entire vehicle for drugs).

Here, Officer Schlup observed Lawrence's vehicle leave a residence known to be associated with drugs. After dispatch indicated Blackard had possible warrants, Blackard asked Officer Schlup to place all of the items from his pocket inside the vehicle. Upon searching Blackard's pockets, Officer Schlup retrieved a mouthpiece to a pipe he (Officer Schlup) believed smelled like marijuana. After Officer Schlup placed the mouthpiece in the vehicle, Lawrence

made the statement, "You put that rubber piece that smells like marijuana inside the car so you can search it didn't you?" At this point, Officer Schlup developed probable cause sufficient to search the vehicle even without having conducted a dog sniff. Still, Officer Schlup exercised caution and withheld from searching the vehicle until PSD Hank detected the odor of a controlled substance coming from the vehicle.

At the very least, these facts warranted an extension of the stop to call a canine, because Officer Schlup certainly had reasonable suspicion that criminal activity was afoot. *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994) ("If, during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for a greater intrusion unrelated to the traffic offense.") (internal quotation marks omitted); *see also United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (finding a prolonged stop justified where the officer had probable cause to search based upon smell of marijuana but took a less intrusive approach and called a police canine). Thus, even assuming Officer Schlup did extend the traffic stop to conduct a dog sniff of Lawrence's vehicle—which the Government contends he did not—he was justified in doing so under the circumstances.

### III. CONCLUSION

Lawrence's motion to suppress evidence is frivolous. *See Penson v. Ohio*, 488 U.S. 75, 91 (1988) ("[T]he canons of professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer—whether privately retained or publicly appointed—not to clog the courts with frivolous motions or appeals."). Lawrence does not assert that either Officer Schlup or Officer Nicholson falsified any information in their reports, and the arguments she advances in support of her motion are rendered invalid by facts she does not dispute. Holding an evidentiary hearing on these issues would be a significant misallocation of judicial resources, and the

9

Government is respectfully requesting this Court deny the motion to suppress evidence based upon long and well-established Supreme Court and Eighth Circuit case law.

                                                              Respectfully submitted,

                                                              TIMOTHY GARRISON
                                                              United States Attorney

                  By     */s/ Jessica R. Sarff*
                            Jessica R. Sarff
                            Missouri Bar #69322
                            Assistant United States Attorney
                            901 St. Louis Street, Suite 500
                            Springfield, Missouri 65806-2511
                            (417) 831-4406

## CERTIFICATE OF SERVICE

     I hereby certify that on July 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case, and I hereby certify that I have mailed by United States Postal Service the foregoing documents to all non-CM/ECF participants in this case.

                                                             */s/ Jessica R. Sarff*
                                                             Jessica R. Sarff
                                                             Assistant United States Attorney

10

Case 6:19-cr-03103-SRB   Document 31   Filed 07/23/20   Page 10 of 10